```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

ISABEL HILL, personal representative
of the ESTATE OF BRYANT L. HILL,
deceased,

    Plaintiff,

v.                                    Civil Action No. 2:07-0223

KENWORTH TRUCK COMPANY,
A DIVISION OF PACCAR, INC.
and PACCAR, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is the defendants' unopposed motion to maintain the confidentiality of the settlement amount, filed July 23, 2008.

I.

The plaintiff filed a petition on July 22, 2008, seeking court approval of the settlement of this wrongful death action in which a minor is a beneficiary. The petition indicates that the settlement is confidential and does not disclose the amount of the settlement. (Petition ¶ 7). The petition further provides that the amount of the settlement will be made known to the court at the settlement hearing or in such fashion as the

court may direct.  (Id.).

Attached to the petition are consent and authorization forms signed by the beneficiaries of the estate of the decedent. In each consent and authorization, the beneficiary consents to the settlement as set forth in the petition and authorizes the representative of the estate to execute all necessary papers and documents and to do all things necessary to consummate the settlement, cause the action to be dismissed with prejudice, and release the defendants from any and all liability arising from the death of Bryant Hill.  The consents do not set forth any of the terms of the settlement to which the beneficiary is consenting, including the proposal that, as the court has recently learned, attorney fees and unspecified costs would absorb 67.67% of the rather substantial settlement in this case.

The day after the petition was filed, the defendants filed their unopposed motion to maintain the confidentiality of the settlement amount, suggesting redaction of the dollar amounts from all papers filed with the court and all transcripts of proceedings as an alternative to sealing of a broader scope.  As grounds for this motion, the defendants state that (1) confidentiality of the settlement amount was an essential term of the parties' settlement, (2) it would be in the best interests of

the beneficiaries to maintain the confidentiality of the settlement amount, (3) maintaining confidentiality of settlement amounts generally encourages parties in reaching settlements and permits defendants to make higher settlement offers, and (4) disclosure of the settlement amount would serve no public interest. (Mot. ¶ 4(a)-(d)).

On August 1, 2008, the plaintiff amended the petition after being directed by the court to locate two beneficiaries, children of the decedent, who had not been located at the time the petition was filed on July 22, 2008. Consent and authorization forms for these beneficiaries were attached to the amended petition and contain terms identical to those of the consent and authorization forms attached to the petition filed July 22, 2008.

II.

Considering the defendants' motion concerning the confidentiality of the settlement amount, the court notes initially that "[p]ublicity of [court] . . . records . . . is necessary in the long run so that the public can judge the product of the courts in a given case." Columbus-America

3

Discovery Group v. Atlantic Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000). The right of public access to court documents derives from two separate sources: the common law and the First Amendment. The common law right affords presumptive access to all judicial records and documents. Nixon v. Warner Comms., Inc., 435 U.S. 589, 597 (1978); Stone v. University of Md. Medical Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988). Submitted documents within the common law right may be sealed, however, if competing interests outweigh the public's right of access. Nixon, 435 U.S. at 598-99, 602-03; In re Knight Publishing Co., 743 F.2d 231, 235 (4th Cir. 1984). Quoting Knight, our court of appeals observed recently as follows:

> Some of the factors to be weighed in the common law balancing test "include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records."

Virginia Dept. of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004) (quoting Knight, 743 F.2d at 235).

The First Amendment right of access has a more limited scope than the common law right, having only "been extended . . . to particular judicial records and documents." Stone, 855 F.2d at 180. The First Amendment right of access attaches if: (1)

4

"the place and process have historically been open to the press and general public"; and (2) "public access plays a significant positive role in the functioning of the particular process in question." Press- Enterprise Co. v. Superior Court, 478 U.S. 1, 8-9 (1986) (quoted in The Baltimore Sun Co. v. Goetz, 886 F.2d 60, 64 (4th Cir. 1989)).

The First Amendment right of access, however, provides much greater protection to the public's right to know than the common law right.  To avoid disclosure under the First Amendment right of access, the movant must show "the denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest."  Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606-07 (1982); Press-Enterprise Co., 478 U.S. at 15; Virginia, 386 F.3d at 573; Stone, 855 F.2d at 180.

The United States Court of Appeals for the Fourth Circuit has further observed that:

> Regardless of whether the right of access arises from the First Amendment or the common law, it "may be abrogated only in unusual circumstances."  When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements.  As to the substance, the district court first "must determine the source of the right of access with respect to each document," because "[o]nly then can it accurately weigh

5

the competing interests at stake."

<u>Virginia</u>, 386 F.3d at 576 (citations omitted) (emphasis supplied).

Regarding procedures for handling sealing requests, our court of appeals has noted:

> First, the judicial officer must "state the reasons for [her] decision to seal supported by <u>specific findings</u>." "The judicial officer may explicitly adopt the facts that the government presents to justify sealing… [b]ut the decision to seal must be made by the judicial officer." Second, "the judicial officer <u>must consider alternatives</u> to sealing the documents. This ordinarily involves <u>disclosing some of the documents or giving access to a redacted version</u>." Third, a judicial officer must give notice to the public by docketing the order sealing the documents. All of these procedures "must be followed when a [judicial officer] seals judicial records or documents."

<u>Media General Operations, Inc. v. Buchanan</u>, 417 F.3d 424, 435 (4th Cir. 2005) (emphasis supplied) (citations omitted).

Of considerable importance here is the allocation of the burden to support a sealing request, which rests on the movant regardless of whether the common law or First Amendment rights of access are in issue:

> The common law presumes a right of the public to inspect and copy "all 'judicial records and documents.'" "This presumption of access, however, can be rebutted if countervailing interests <u>heavily outweigh the public interests in access</u>," and "[t]he party seeking to overcome the presumption bears the burden of showing some <u>significant interest</u> that

6

> outweighs the presumption." . . .
>
> The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present <u>specific reasons in support of its position</u>. See <u>Press-Enterprise Co. v. Superior Court</u>, 478 U.S.1, 15 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion").

<u>Virginia</u>, 386 F.3d at 575 (some citations omitted).

### III.

It matters not in this case whether the defendants' request is subject to the less rigorous common law standard or the more rigorous First Amendment standard, for in this case the defendants have failed even to set forth significant competing interests sufficient to heavily outweigh the public's right of access and overcome the presumption of access to all judicial records and documents under the common law. As earlier noted, the Fourth Circuit has held that the right of access "may be abrogated only in unusual circumstances" regardless of whether the right of access arises from the First Amendment or the common law. <u>Virginia</u>, 386 F.3d at 576. The court sees no unusual circumstances presented by the defendants in this case warranting the need for secrecy.

7

The defendants, in their motion, cite to the court's opinion in <u>Wilmink v. Kanawha County Board of Education</u>, No. 2:03-cv-179, 2006 WL 456021 (S.D. W. Va. Feb. 23, 2006), wherein the undersigned granted a sealing request after finding that the plaintiff had made the necessary showing under both the common law and the First Amendment rights of access.  In <u>Wilmink</u>, the sealing request involved a limited amount of information, namely, the names and identifying information of persons who were identified as victims, or potential victims, of sexual abuse. <u>Id.</u> at *2-3.  Weighing the common law and First Amendment right of access against the privacy interests at stake, the court noted:

> The redacted names and identifying information here serve no useful public or investigative purpose.  The events described in the documents represent some of the most painful chapters in the lives of the individuals whose information has been redacted.  As a result, the competing interest of keeping this information private significantly outweighs the public's common-law right of access.
>
> Further, the privacy interests at stake support a compelling governmental interest in shielding the information from the First Amendment right of access.  If individuals are assured their identities will be protected in situations like those at issue in this and related cases, they are more likely to come forward and candidly recount their experiences.  This facilitates both the removal, and prosecution, of dangerous and active sexual predators employed in positions of public trust.

<u>Id.</u> at *3.

Although the defendants here, like the plaintiff in <u>Wilmink</u>, seek to maintain the confidentiality of only a limited amount of information, the amount of a settlement cannot be compared to the highly sensitive information sought to be sealed in <u>Wilmink</u>. Further, the amount of the settlement is not a tangential matter with respect to the plaintiff's petition, but rather goes to the heart of the petition inasmuch as the court is being asked to approve the amount of the settlement and the distribution thereof. Without access to this information, the public has no means of judging the product of the court in this case.

The defendants additionally rely upon <u>Gambale v. Deutsche Bank AG</u>, 377 F.3d 133 (2d Cir. 2004), in which the Second Circuit Court of Appeals held that a defendant was entitled to the confidentiality of the dollar amount of the settlement reached between the parties. The circumstances in <u>Gambale</u>, however, starkly contrast with those present here. In <u>Gambale</u>, the court was not asked to approve the settlement. Rather, the disclosure of the settlement amount arose in the context of an order in which the court unsealed documents which had been attached to a motion for summary judgment upon which the court had ruled prior to the settlement. <u>Id.</u> at 136-37.

The Second Circuit expressly distinguished the circumstances before it from those present here, noting:

> [T]here may well be valid reasons in this and other cases terminated by settlement for maintaining the amount of settlement in confidence when the settlement itself was conditioned on confidentiality and <u>when the settlement documents were not filed with the court and were not the basis for the court's adjudication</u>.

<u>Id.</u> at 143(emphasis added); <u>see</u> <u>Pansay v. Borough of Stroudsburg</u>, 23 F.3d 772, 781 (3d Cir. 1994)(holding that when a settlement agreement is not filed with, interpreted by, or enforced by a court, it is not a judicial record presumed to be accessible). Again, the plaintiff is asking the court to approve the settlement and the distribution of the settlement funds. The amount of the settlement and to whom it is to be distributed is essential to the court's adjudication. The terms of the settlement agreement will become a part of the judicial record as a matter of necessity.

### IV.

Accordingly, it is ORDERED that the defendants' motion to maintain the confidentiality of the settlement amount be, and it hereby is, denied.

The plaintiff is directed to file a second amended petition fully disclosing the amount of the settlement and the proposed distribution thereof. Additionally, if the plaintiff wishes to proceed on the basis of signed consent and authorization forms, the plaintiff is further directed to file amended forms in which it is clear that the beneficiaries are making their consents and authorizations with full knowledge of the terms of the settlement and the distribution thereof.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: August 26, 2008

John T. Copenhaver, Jr.
United States District Judge